Consolidated case numbers 23-1919 and 24-1046. Iron Workers Defined Contribution Pension Fund et al. v. Next Century Rebar LLC. Arguments not to exceed 15 minutes per side. Mr. Walters, you may proceed for the appellant. Good morning, Your Honors. Brian Walters on behalf of Next Century Rebar, who I'll be referring to as NCR in this argument, I am reserving three minutes for rebuttal. The case involves a common subject of federal litigation employer contributions for fringe benefit multi-employer funds in the ERISA context, but in a very unique factual context that's different than what is normally before the courts. NCR is in the very unusual situation where it has paid fringe benefit contributions for all of the employees on this particular project that's an issue, yet has still been sued for non-payment. The case arises out of unique circumstances as a result of the COVID pandemic. Involved a project that started in June of 2020 in Detroit, where due to an unprecedented shortage in workers, NCR had to bring in out-of-state union workers to help supplement the local union force in Detroit in order to complete the project. This case is about the fringe benefit contributions for those out-of-state workers. And did you, is your position that you made the contributions to the two out-of-state locals and not to Local 25? Absolutely. It's not only our position, but it's not in dispute in the record. There's evidence in the record with regards to that that's not been disputed by the funds. So that is the case. So what we're being asked to do here is to essentially make a double payment, to make a second payment. So one question that I had was, when these workers are seeking the benefits, actually, and they're from Georgia or the other state, I can't remember what it was, do they get the benefits payments from their local union in their home state, the Georgia people from the Georgia Union? That would be the normal, from the funds, but yes. Funds, right, funds. That would be the normal processes, be upon retirement, they would get, you know, pension payments from the Georgia funds. If there was a defined contribution, they would also be able to get that. They'd get their health and welfare covered. So we have pension and vacation in front of us, right? Those are the two issues? Those are the two primary issues, correct, so this is a very unique situation in terms of you workers doing a one-off job out of state, having fringe contributions, you know, purportedly under the CBA. The CBA admittedly provides that all fringe benefit contributions, the for work that's done within the local 25 jurisdiction, are supposed to be paid to the local 25 funds. We acknowledge that. That's language in the CBA. It's not a dispute. That was the key basis for the district court's determination. And we are not... Your position that you don't owe anything or that the amount that was assessed is incorrect? Our position, your honor, is that it was premature to enter summary judgment in the case, that there should have been a trial in the matter with regards to both the calculations and with regards to our equitable defenses with regards to setting off the monies that we had already paid to those other local funds. Right, and so after the trial, is it your position that the trial facts should find that you don't owe anything? That is going to be our position at trial if the case is reversed and remanded, that in fact we didn't pay in full on behalf of all of these out-of-state employees who are at issue. But, of course, we understand that there would have to be a trial on that issue upon remand. But again, to clarify the concern that I have, Local 25 will not be on the hook for paying any benefits to the particular workers, the Local 25 fund. That will not be on the hook. That's my understanding, your honor, although I think that's an issue that potentially would have to be sorted out at trial. I don't think that the record on summary judgment is sufficiently developed for me to really be able to definitively answer that question for the court. I think that the challenge that we have here is the premature move, premature entry of summary judgment. And it really comes from two different directions. One is that the district court failed to consider the equitable defenses in the particular factual circumstances in this case, and did so because the district court believed that NCR had to cite a factually analogous prior precedent. In other words, that we had to find a district court or circuit court opinion somewhere under ERISA, under these types of circumstances. How is that an abusive discretion? It's an abusive discretion because under the Holland case from the United States Supreme Court, courts of equities have to make those determinations on a case-by-case basis. There's a really telling block quote that we include in our brief that I want to just briefly hit on this point, your honor, that I think makes this point clear. The Supreme Court said the following, the exercise of a court's equity's powers must be made on a case-by-case basis. In emphasizing the need for flexibility for avoiding mechanical rules, we followed a tradition in which courts of equity have sought to relieve hardships which from time to time arise from a hard and fast adherence to more absolute legal rules which have strictly applied threatened the evils of archaic rigidity. The flexibility inherent in equitable procedures enables courts to meet new situations that demand equitable intervention. Such courts exercise judgment in light of prior precedent but with awareness of the fact that special specific circumstances that are often hard to predict in advance could warrant special treatment in an appropriate case. So it's absolutely appropriate for the district court to look and say is there prior precedent here for applying equitable defenses in a particular case but that isn't where the analysis stops. Under Holland and under other cases such as the Veniklass case that from the Sixth Circuit here, the court still is obligated to look at the particular facts of the case to determine whether or not equitable defenses are appropriate in this case. And this is where the district court committed a clear abuse of discretion. The district court's analysis is a single paragraph on the issue of the equitable defenses and what the district court said is the following, quote, though equitable relief itself is not barred under ERISA, the factual scenarios in the cases defendant relies upon are not analogous to the facts of this case, end quote. So we cited some examples of district courts and even court of appeals decisions that have allowed equitable defenses in the ERISA context. The district court concluded well those aren't similar to this. This wasn't a double payment issue. It didn't involve you know the types of facts that you're trying to argue about here and therefore that's the end of the analysis. My hands are otherwise tied. But that seems to indicate that the district court did exercise its discretion. It looked at those cases and found that those didn't apply, weren't similar enough to this one, and so it didn't apply the equitable defense or allow you to use the equitable defense. Isn't that the district court using its discretion? No, I would disagree, Your Honor, because what the Supreme Court said in Holland is that you certainly have to consider what prior precedent is, but you also, the court also is required to determine whether in the particular specific circumstances before the court, which may not have ever come up before, which may be hard to predict in advance, that those could warrant special treatment in this in this particular case. And so the district, if the district court had done an analysis and it said we believe that these facts don't rise to the level of an equitable defense because of whatever reasons, if the court had considered, for example, there are there are multiple facts that support our equitable defenses in the case. One of which is that the funds administrator in this case was informed and fully aware that out-of-state workers were going to be used on the project and that the local union's business agent was going to be directing NCR on how to pay those fringes. Another important fact in this case is that every single month NCR submitted remittance statements to the funds administrator for Local 25, showing all of the fringe payments that were being made on behalf of the Local 25 workers, which were paid in full because there was no question of where those payments would go, and on behalf of the out-of-state workers as well, showing that only very limited fringes were being paid by NCR on behalf of those out-of-state workers. So every month the funds administrator is getting these remittance statements and they're fly-spec-ing them. We got a notice... So on those statements, did those statements reflect the exact amounts then of vacation and pension payments that were being made to the other two locals? No, these were statements that showed the payments being made to Local 25, to the Local 25. So it didn't show that NCR was making payments to 846 and 416? No, what it did show is that there were some fringes on behalf of some of those out-of-state workers that were being paid to Local 25. It was kind of an unusual, the whole factual situation was unusual, but one thing that was particularly unusual is that the direction from the Local 25 business agent was, pay the vacation fringes to the Local 25 vacation fund, even for the out-of-state workers. Vacation was treated differently. So was that done? That was. So every single month the funds administrator is getting vacation fund contributions for out-of-state workers, not just for Local 25 workers. But all of the other blanks, the remittance form which is in the record, has a whole bunch of different lines that shows, you know, how much are you paying for pension, how much are you paying for health and welfare, how much are you paying for training, all of the different fringe payments that you have to make. So your basic point is that Local 25 funds should have realized that they were not getting the pension contributions? Absolutely. At least that's an issue that should have been considered by the district court and was something that should be considered at trial. It was that there's no analysis of this issue of these questions whatsoever in the district court's opinion. One of the that was confusing to me in this case is exactly how should the contribution rates be determined under the relevant CBAs? That's a fair question, Your Honor. Article 3 of the CBA directs that contribution payments to the Local 25 fund are to be made in accordance with the Local 25-1 wage rate schedule, which is part of the record. That wage rate schedule, which is specifically, it's at page ID 1238 through 1241, I believe, of the record below, spells out for vacation and pensions benefits. It takes what the hourly rate, wage rate was for Local 25 at the time, which is $28.82, I believe, multiplies it by a percentage, that's 60% of that roughly for pension, 11% of it roughly for vacation, and then comes up with an amount. So for every hour, it's $17.49 for pension, $3.41 for vacation. That's talking about the journeyman base wage for a first shift was $28. Is that done per employee on the basis of each employee's base wage? Well, that's what one of the disputes is, Your Honor, with regards to that calculation. What the auditor did and what the district court adopted in its summary judgment opinion, the auditor for Local 25 used Local 25's base wage rate, and I believe for Local 416, which is the California-Nevada local, also used the Local 25 base wage rate of $28.82. But for Local 846, which is the southeastern United States where some of the workers were pulled, the auditor used the wage rate down south, which is more than $28.82. So as a result, when you multiply those percentages, you end up with a higher pension contribution that the auditor said was owed or a higher vacation contribution that the auditor said was required. So you had inconsistency, even by the auditor, in its own analysis on, are we going to use the Local 25 rates across the board for all of this pool of workers, or are we going to use the particular wage rates for each of these particular locals in calculating the amount? Did you present that as a problem at the summary judgment stage? We did, Your Honor. We submitted an affidavit and deposition testimony from our controller, Christina Grantham, which is in the record, raising those issues. And for whatever reason, the district court just missed that issue entirely. The district court simply didn't address that issue at all. Instead, incorrectly stated that there was no evidence presented on behalf of NCR to attempt to rebut the audit. But the declaration was submitted as part of the summary judgment. And the other question that I had on rates that I wanted to give you an opportunity to address is on vacation pay, Article 5, Section 6, says that the amount shall be equal to the percentages, as outlined in Article 3, of the employees' gross earnings before taxes. Did you make any arguments about the correctness or not of the audit on that? I believe we did, Your Honor. So I'm going to try to take a look real quick at the Grantham declaration with regards to that point. But that would be where we would look? The Grantham declaration, as well as there was also deposition testimony from the controller that's in the record and was part of our opposition to a summary judgment as well, Your Honor. Deposition of Grantham. Grantham is the controller. Okay. That's correct, Your Honor. Do you have any questions? I do see my time's up. Thank you. Good morning, Your Honors. Laura Lindsey here on behalf of the Ironworkers Local 25 Fringe Benefit Funds. And we're requesting that this court affirm the district court's order in its entirety. This is a straightforward case under ERISA. There have been plenty of cases like this before the court. The plaintiffs are the trustees of the multi-employer plans. They have a fiduciary duty to collect contributions that are owed to them under the written agreements for their funds and the CBA. But your opponent is saying that the monies were already paid to these other two locals. And I thought that I understood him to say that the employees would get the benefits when they are due those benefits from those other two locals. So why does the fund for Local 25, either why are they entitled to this or why wouldn't they just have to give the money over to... Are they paying the employees out of this fund? So I think first it's a question of the written plan documents. ERISA is very focused on that. And the CBA, which is not in dispute, requires the contributions be paid to the Local 25 funds for work performed within their jurisdiction. It doesn't matter who's performing the work, whether it's someone from Michigan, someone from out of state. If you're performing the work within Local 25, that's where the money is supposed to go. There are travelers. Some people, you know, alternatively would stay in Michigan their entire career and only have benefits from the Local 25 funds. But it's possible that folks move around, go in and out of states. They might vest in retirement in Michigan and they might vest somewhere in North Carolina and they'd be entitled to two different pensions potentially. So just because Next Century is claiming that they made contributions to someone in North Carolina, you know, the trustees in Michigan have nothing to do with what those funds are. They don't know if those contributions were appropriately paid. They don't know if the trustees in those states are adhering to their obligations. But what they do know is that the work was performed within the jurisdiction of their funds and they have a duty to collect those contributions for that work. Doesn't the CBA also say that there shouldn't be double payments? So even if it went to those other locals, that there shouldn't be double payments of the fringe benefits? Correct. But the underlying obligation is first to the Michigan funds. And I think what's important for the court to recognize is that the record does not have any explicit evidence about what Next Century actually paid to the other funds. They've said they've made these payments. We don't know in what amount. We don't know for which employees. We don't know if they made the correct payments to the other funds. So why isn't this a big fact question? Because there is the declaration of this employer person, Granholm, and she says payments were made to the other two locals' funds. Why isn't that enough to show that there's a fact question? Because it's really a question of law. The contract requires that the payments be made to the funds in Michigan. They've claimed they've made payments elsewhere. We have no idea in what amount. They were paying under a different contract with different rates. The trustees of the local 25 funds are obligated to enforce the contract with their rates. So as, you know, previously discussed, there's a percentage of wages owed for the pension fund in Michigan. It appears that Next Century paid a much lesser rate to the funds in other states for the work that was performed in Michigan. That's clearly contrary to the terms of the contract. And ERISA, time and again, there's case law that says the literal terms of the agreement are supposed to be enforced. And that's what the trustees of the funds have a fiduciary obligation to do. And there is this concept of reciprocity, which we touched on briefly in the district court and in our appellate brief. And that's where if there is a traveler coming in, they sign a form and they say whether they want their money to stay in Michigan where they're doing the work or do they want their benefits to go back where they came from. And that's a process that funds use across the country, but it requires a written election by the participants so that they're knowing where their benefits are going. So what, I apologize for not knowing how these things work, what would lead a worker to decide to have the funds go to local 25 fund as opposed to their home local? I mean, it could depend on their personal circumstance. If they think they're going to be in local 25 for an extended period of time, maybe they're moving to Michigan, it might make sense for them to have their benefits start being paid to those funds so that they can invest in that state. The benefits payable from local 25 might be better than the benefits payable from a different state. We don't know what the benefits are from another state because that's not our party, that's a completely different entity. But if they're traveling around, presumably they want to have one home base, is that right? And you're saying they might pick local 25 as the home base because of the relative benefits there, but if they're traveling around and only in Michigan for this one building, which is what was involved, right? It seems that they would want to keep some consistency in their home local. Right, and that's what they can do with the election of the reciprocity forms. But here, Next Century didn't even avail their employees of that process because normally what it would require is for Next Century to still pay the contributions at the local 25 rate to the local 25 fund office. That fund office would review, say, who are these for? Are these contributions supposed to stay here? Are they for travelers? Are we supposed to send them somewhere else? And the fund office then runs that process through to make sure that they're doing what they're supposed to be doing, collecting the contributions under the local 25 contract and then adhering to any potential written directive of another employee. But again, the issue here is that there's no evidence of what they actually paid. Next Century Rebar is asking for an offset and asking for a credit in a completely undefined amount. How is the fund's auditor supposed to reduce the audit balance based on a mystical number that hasn't identified and similar to the district court and its damages calculation? Does the Grantham Declaration indicate that there are fact questions about the computation of the audit that would lead for us to need to remand so that the district court could address these factual issues? I do not believe that it does. What her declaration focuses on is the wage rate that the auditor was using when calculating the pension and the vacation contributions. And as noted in the wage and benefit schedule of the CBA, there's a base rate for journeymen and so that's the rate that an employer needs to pay its employees, but it's not prevented from paying something above scale. Sometimes a superintendent would come in, they might get something above the base rate. Don't people get more money depending on how many years they've worked? There's apprentices, so apprentices usually have a lower contribution and then as they get into the journeyman status, there can be different classifications of the wage and benefit scale. But that's dependent on each CBA. All journeymen are paid the same amount? No. There's just a base rate that they must be paid if they're performing under the Local 25 contract. But an employer has the discretion to pay above scale and if you do that, the natural consequence would be if there's a contribution rate based on a percentage of wages, then the contribution amount would be higher. So here the funds auditor utilized the wages that Next Century was paying its employees. The auditor wasn't looking at contracts in other states to say, oh, let's apply a different 846 contract to this project. He was applying the Local 25 rates based on the data Next Century gave him on the wages that its employees were being paid and the hours they were working. So it was based on the actual wages? Right. So I find the two different provisions in Article 5 somewhat confusing. For pension fund, it's supposed to be an amount equal to the percentages outlined in Article 3. Whereas for vacation pay, it's supposed to be an amount equal to the percentages as outlined in Article 3 of the employee's gross earnings before taxes. Are those two different things? Yes. My understanding is that the pension contribution is based on the wage rate paid per hour and that the vacation is based, like you said, on the gross earnings after taxes. And is it undisputed that that is what the auditor used in these calculations? I believe that it is because he used the information provided by Next Century in terms of the wages that they were paying on the project to their employees. And Next Century has not disputed anything about the vacation calculation other than the percentages. Is base wage rate defined anywhere? I do not believe so. I believe it's on the wage and benefit schedule and it says it's a percentage of the base wages. Can you tell me what base wage means? Yes. It means that that is the lowest amount that the contractor can pay, for example, adjournment if they're performing work on the Local 25 project. So that's that $28 figure. That doesn't prevent the employer from paying them $31 an hour. They just need to meet that basic threshold. And I'd like to talk about the argument for the equitable defense of equitable estoppel or just to consider a new remedy here for Next Century. ERISA case law has clearly said that there are very limited defenses to this type of action when fiduciaries are pursuing delinquent fringe benefit contributions. Typically it's the contributions are illegal, the contract was executed as fraud, there's a nonexistent contractual obligation, the contract has been terminated. None of those defenses apply here. Next Century hasn't raised any of them. That's a matter of statute that limits the equitable defenses? That is case law. But what Next Century is asking for is they've articulated the need for an offset based on contributions they've paid elsewhere. But as I already discussed, there's no evidence in the record of what that offset would even be. If they truly paid all these contributions for particular employees on the project, they should be able to identify what they paid, under which rate, to whom, on behalf of whom. They haven't done that. Our trustees don't know with certainty that the benefits were actually paid. They're saying they were, but we don't know that, and they have the fiduciary obligation to ensure that Next Century is paying its benefits pursuant to the contract with Local 25. Do they have that exact amount at the summary judgment stage? No, Your Honor. And additionally, with respect to the equitable argument, Next Century is not without a remedy here. There has been case law in the Sixth Circuit, the interior-exterior case, where the court has permitted an employer to seek a refund of mistaken payments to a benefit fund and has used federal common law for that type of claim. And so that has typically required the employer to make a claim against the fund that it inadvertently overpaid and for that fund to say, no, we're keeping the money, and then the employer can make a claim in court saying that the fund is abusing its discretion by not returning the money to the Hasn't the time run on Next Century or the local being able to do that? Can you say that again? Hasn't the time run to be able to do that? Well, I think it depends on the trust agreements that would govern the other funds, which we do not know what those trust agreements are. It's not our fund. But when we're talking about equity, I think this would be the type of case that maybe Next Century could be successful in if it to bring a claim against Local 846 and say, hey, listen, we did this wrong. We paid you. We weren't supposed to pay you. It's appropriate for us to get our money back so that we can pay contributions on the project where we were actually performing the work and under the written agreement that we actually signed. That is seemingly a claim that they could make, but that's a claim that's with 846, with 416. That's not a claim before this court. I think it's important to recognize that Next Century was even permitted by the district court to bring in Local 846 funds, and they failed to do so by the deadline they were given. So they've had an opportunity to resolve this. They've had the opportunity to go to these other funds, figure out what they paid. Is there any reciprocal process that could have applied to what they paid elsewhere? But they failed to do that, and they have failed to say what they paid and where they paid and on behalf of which employees. How do you deal with the no double payment provision that's in one of the CBAs? Right. And I don't think it's a double payment. What the trustees are requesting today is to enforce the terms of their agreement and the original underlying obligation. So that, and again, by Next Century paying the benefits to Local 25 on behalf of its employees, all of that would be run through the fund office. Those employees could start accruing benefits in Michigan. The fact that they paid another fund is ultimately Next Century's mistake. They paid the completely wrong party, and they have a mechanism already under existing case law to make a claim in equity to try and get that money back. International agreement says under no circumstances shall there be a request for a payment of double fringe benefit amounts. Right. And we're not requesting that they pay twice. The fiduciaries of the Local 25 funds are just requesting or seeking to enforce their agreement in the first instance. So... If they had paid hypothetically the same amount that you're requesting already to the other two funds, then aren't you making a request for a payment of double fringe benefit amounts? I think principally our first request is to enforce the agreement. If they had happened to pay the exact amount to the other funds, I think that completely changes the factual scenario, because we would understand what they did pay, what rates they were using, who they were paying. If they were paying the Local 25 rates to some other fund, I think that would be a very different scenario, because at least we would know they were complying with the terms of the contract, except for the fact they paid the completely wrong party. But we don't have that information here. We're just going on their assumption that they've what they should do to satisfy the contract, but they admit that they weren't complying with the terms of the contract that they signed. Thank you. Any further questions? All right. Thank you, Your Honors. Briefly in rebuttal, I think Your Honor hit the nail on the head when you asked the question, why isn't this a big question of fact? The biggest problem that we have below is the paucity of the district court's opinion and analysis with regards to these issues. The district court decided that because DENSIAR was unable to cite a prior precedent that had similar facts to what are before the court, messy, complex, unusual facts, it was not going to actually consider the merits of these equitable issues. Your opponent says you didn't present any facts, that you didn't show, for instance, how much you had contributed to the 846 and 416. We didn't have a trial, Your Honor. You were opposing a summary judgment motion. Absolutely. So wouldn't you want to present some facts to show your side of the story? We did present facts. We presented facts. For the deposition. The depositions and declaration. And the declaration. And those facts wouldn't have been enough for the trier of fact to finally conclude in our favor, we weren't moving for summary judgment. We were simply opposing the motion for summary judgment on behalf. And you want to show a fact question. And so if you had the information that you had, in fact, made $100,000 of contributions to this fund, presumably you would have said so. Yeah, I mean, there's testimony in the record, not with regards to the exact numbers, but with regards to the fact that payments were being made by NCR to these other funds. The exact amount was something that would be presented at trial. We were not attempting to get cross-summary judgment as to a smaller number or something like that. That wasn't the purpose of the motion practice before the court. That would be something that would be presented to the district court at trial. And so that was the position that was taken maybe in 2020 hindsight, hearing the questions, you know, get back in the time machine. But that wasn't the burden that NCR had in terms of opposing the motion for summary judgment on which plaintiffs have the burden of proof. But you do have those numbers. Absolutely. I mean, that information is readily available. It's not in the summary judgment record, but that information regarding that has been shared with the plaintiff funds in the course of settlement discussions and other attempts to resolve these issues. It's just not part of the summary judgment record, nor does it have to be, Your Honor. And is your position then that you have fully paid the amounts that local 25 fund is seeking? Well, the fully paid part is kind of where the rubber hits the road, right? Because we have disagreements as to, you know, what is the amount in terms of these percentages and do you use the local 25 rate or do you use the local 846 or 416 rates? So the fully paid question is one of those that is kind of a messy thing. Right, but they have an amount that the district judge has awarded. And is it your position that you have paid that full amount already to these other two local funds? Well, definitely not from the standpoint of that full amount includes interest and statutory penalties and all kinds of add-ons. Putting those to the side. I don't know the answer to that definitively, Your Honor. I simply don't know as I sit here today. I do think my time is completed. So unless the court has any other questions. Thank you. Thank you.